Bentley, J.
Mr. Lowe brings this action to obtain an injunction against the defendant, the Wheeling & Lake Erie Railway Company, to prevent the company from filling up a certain cattle-pass which now exists under its railway track connecting two parts of the plaintiff’s farm. The company admits that it is its purpose to fill up the cattle-pass, and denies the right of the plaintiff to the injunction forbidding it so to do.
The case being appealed to this court, it has been tried before us upon the pleadings and statement of facts and the evidence adduced, including certain records from the county records here.
The land in question, the farm of the plaintiff, is the east half of lot No. 147, of the 4th section of Townsend township, Huron County, Ohio. This farm originally contained about 100 acres of land. In 1880, the predecessor of the defendant company, the Wheeling & Lake Erie Railroad Company, desired to construct its line of road through this farm, and applied to Alpha Lowe, the father of the present plaintiff, who then owned the farm, for permission so to do. He permitted the railroad company to so construct this track through the farm, and entered into a certain written contract with it by which he so permitted it. This construction of the road seemed to require a high grade across this farm of ten or twelve feet in height, and the road so crossed the farm that it left to the south of the grade a part of the farm of seven or eight acres in extent, the rest of the farm being upon the north side of the grade. The contract was signed by Mr. Lowe only,and sealed by him,but when accepted by the railroad company under such circumstances,so far as the contract contained stipulations to be performed by the railroad company, it was bound to perform them, the same as if its officers had in fact signed the contract.
The contract provides as follows:
“Elnoiy all men by these presents, that I, Alpha Lowe, of Townsend township, in the county of Huron, in the state of *745 Ohio, in consideration of one hundred and fifty dollars, cash to be paid, and the further consideration of the public good and the benefits which will accrue to me from the construction of the Wheeling & Lake Erie Railroad, do agree that said company may locate and construct its road upon or through my land situate in the county of Huron, Townsend township, state of Ohio, and described as follows, to-wit: Being the east half of lot No. 147, in the 4th section of said township, and being the farm on which I now reside, said company to construct an under cattle-pass, if practicable, also one over-crossing at grade; and if the said road shall be under contract or process of construction not later than two years from this date, I hereby covenant and agree for the above consideration, on demand, to convey to said company for railroad purposes for single or double track, sixty-six feet in width, that is to say, 83 feet r n each side of the center of said road, as the same may be located or constructed by said company over and through said land by a good and sufficient deed of conveyance to said company, stipulated as hereinbefore and after, and binding on me and my heirs and assigns, said sum to be paid in full before possession taken, and said sum to cancel a claim 11 owhave against said company for ten dollars for injury to my corn.
In witness whereof, I have hereunto set my hand and seal this 4th day of October, 1880.
“(Seal.) Alpha Lowe.
“Attest R. H. Cochran, W. W. Graham.”
After the making of this contract that grade was made across this farm as stated. In apparent compliance with the contract the railroad company did construct a cattle-pass some ten or twelve feet in height,and with a clear space high enough that a wagon with a rack might be driven through thus creating a pass between the northerly part of the farm with that upon the southerly line of the grade.
Thereupon, shortly afterwards, when the railway came to be fenced, the fence was made with reference to the use by the land owner of this cattle-pass in connection with the farm; that is, the fences upon the line of the road were turned in to the edges of the cattle-pass on both sides, so that there was free ingress and egress for cattle and for anything that the owner wished to pass through there from one side of the farm to the other. That situation was maintained from that time until the present, and it is the cattle-pass thus built and maintained that the present owner of the right of way designs to fill up.
*746 In 1883, after the making of the cattle-pass in apparent conformity with the stipulations of the contract, Mr. Lowe made a deed to the railroad company, and as its terms are important, at least a portion of the terms, and as the deed is short, I will read it:
“Know all men by these presents, that we, Alpha Lowe and Maria, wife of said Alpha, of Townsend township, Huron county, Ohio, in consideration of the benefits to accrue to us from the construction of the Wheeling and Lake Erie Railroad and the sum of one hundred and fifty dollars, in hand paid by the Wheeling and Lake Erie Railroad Company, here receipted, do give, grant, bargain, sell and convey unto the said Wheeling and Lake Erie Railroad Company, its successors and assigns, a strip or parcel of land containing one and 74-100 acres, more or less, through the land of said grantor, situate in the east half of lot No. one hundred and forty-seven, (147,) section four, (4), Townsend township, Huron county, Ohio, and which is described as follows:
“A strip of land sixty-six (66) feet wide, commencing at the east boundary line of the lands of John Gr. Bott, being the west half of said lot on the west, and thence funning south-easterly to west boundary line of lot-No. one hundred and forty-eight (148) in said section on the east. Said strip or parcel of land is 66 feet in width; that is to say, 33 feet on each side of the center line of said railroad, as the same is located through said land from a point on the west boundary line of said land to a point on the east boundary line of the same as above described.
“To have and to hold said described strip of land to said The Wheeling and Lake Erie Railroad Company, its successor and assigns, for the purposes of said railroad and as its right of way.”
Then follows the release of dower by Mrs. Lowe, and the usual formalities in the execution of a deed.
This deed being delivered to the railroad company, was shortly'thereafter filed for record, and duly recorded in the proper volume of the records of deeds of this county. Before the making of this deed, the railroad compaixy had mortgaged its entire line of property to certain persons in the East for a large sum of money borrowed, and that mortgage was duly recorded. After the .making of. this deed, in July, 1884, the mortgagees of the railroad company began an action in the United States court for the northern district of Ohio, eastern division, against the railroad company for foreclosure of this mortgage, and such proceedings were *747 had in that case that the mortgage was foreclosed, and the property thus mortgaged, ordered to be sold, and on the 28rd day of April, 1886, the Special Master Commissioner appointed by the United States court in that proceeding, sold, under the decree of the court, the railroad property to certain three persons named as trustees, and those trustees afterwards, for a valuable consideration, on the 25h day of June, 1886, conveyed the property thus purchased by them to the defendant in this action, The Wheeling & Lake Erie Railway Company.
The contract in question given by Mr. Lowe, was recorded, but recorded in the record of deeds, and it is claimed that, that record being in a volume not designated by the law, it is of no moment in a trial of this case; that is,it affords no constructive notice to this railway company of the existence of such a contract, and that the record itself is not receivable in evidence for any purpose; and it is claimed that the railway company as well as these trustees wer.e innocent purchasers of this property; that they had no notice,neither actual or constructive, of the terms of this contract, or the obligation of the railroad company to either construct or maintain this cattle-pass, and that therefore, whatever the rights of Mr. Lowe may have been as against the original railroad company, he cannot assert them or enforce them as against the present railroad company. I will state perhaps what I omitted to state, that Alpha Lowe had died; the title to the farm descended to the present plaintiff, Marshall W. Lowe, or was conveyed to him by deed; at least, Marshall W. Lowe now stands in the place of Alpha Lowe as to this transaction.
The plaintiff claims that whatever may have been the effect or want of effect of the record of this contract; yet the contract was made, and that, ever since the construction of this cattle-jiass, Mr. Lowe, the plaintiff,or his father, while each respectively held the title, was in the actual and notorious and apparent possession of this cattle-pass; that it connected the two portions of this farm, and that it was observable to any person who came within sight of the railroad or of the farm at that point, and that therefore such possession was notice to the subsequent purchaser of the railway property.
The railway company deny that that was constructive notice to it, and it also alleges that the contract itself did not require the maintenance of a cattle-pass; that the contract simply required a cattle-pass to be constructed, but was *748 silent as to any maintenance of it. The counsel for the railway company, however, admits that if this road were still in the possession of the original company with whom the con-ti'act was made, it would have no right or authority to fill up the cattle-pass; that although it had not, in terms, contracted to maintain it, yes it could not, at least, fill it up.
The plaintiff claims, however, that the contract, fairly construed, requires the maintenance as well as the construction of the cattle-pass in question.
The counsel for the railway company, in endeavoring to sustain its position regarding the want of constructive notice by possession, cited this rule, that, while as a general thing, it is true that actual possession of real estate is constructive notice to every person and the world as to any real rights that the possessor has in the real estate, yetthat there are exceptions to that rule, and among them is this exception, —that the possession or' land retained by the grantor after he has made a deed conveying the land, is not ixotice to any purchaser who takes from his grantee, because having granted the title to the land, it will be presumed that he is simply a tenant at sufferance of his grantee, and that a subsequent purchaser from the grantee has a right to so assume; but while that is, by the great weight of the authorities, the general rule of law, there are some cases that hold otherwise, apparently though.not the majority. As a matter of interest, I would say that it would seem that this rule is not followed, and apparently not recognized in the case in the 82 Me., McLaughlin v. Sheppard; nor in case of 51 Maine 161, the case of Boggs v. Andrews; nor in a certain California case.— I think it is 25 California; nor in a case in the 89 Illinois, page 460; nor in the 107 Illinois, page 136, and the matter is also noticed in the second Leading Cases in Equity, page 184.
Now, this general rule rests upon this proposition, that the grantor of a deed cannot claim possession in conflict with the terms of his deed; that where he is found in conflict with the terms of his deed, it may be presumed that he is simply a tenant at sufferance, and such possession is not notice to those who subsequently deal with the grantee regarding the land. And the question now is whether in this case, the facts bring the parties within the operation of this rule.
I call attention to the terms of the deed. It is a deed which grants in the granting clause to the railroad company this strip of land; but in the tenendum clause it recites, “To have and to hold, said described strip of land to said, The Wheeling & Lake Erie Railroad Company, its successors, and assigns, for the purposes of said railroad, and as its right of way. ”
*749 The scope of the title then, which the railroad company took to that land, was the title for the purposes of its railroad, and as its right of way. It was then not in every sense an absolute deed of the whole property for any purpose whatever for which the railroad company might see fit to use the land, but for the purposes recited.
Now if this possession which the grantor so retained in the land, was in conflict with the terms of his deed, his possession would come under the general rule which I have mentioned, and as against subsequent purchasers in good faith, from his grantee, he could not claim that his possession was constructive notice. But was the possession which he retained and which he had all these years, in conflict with the terms of his deed?
It is not claimed in this action, by the defendant, the railway company, that the use of this cattle-pass is inconsistent with the use of this land for the purposes of its railroad, andas its right of way; it makes no such claim as that either by pleading, or by proof offered, but it simply assumes the absolute right to fill it up regardless of the want of any necessity for so doing for the purposes of its railway.
It is a matter of common knowledge that these passes are frequently constructed and maintained under railway grades, and it is a use that is entirely consistent with the use of the right of way for railway purposes, and when the plaintiff is allowed to retain such possession of so much of a mere right of way, his possession is not in conflict with the terms of his deed, and is consistent with it, just as consistent as is his right to an over-pass, or as the rights of any person to whom the railway company might allow a pass under its grades.
Among the cases cited in support of this general rule, that the grantor cannot claim that his subsequent possession of the lan dgranted,in conflict with the terms of his deeds is constructive notice to the world, are many cases from Michigan, and no state holds any firmer to this doctrine as appears from the reports, than that state; yet in a case which occurs in the 18th Michigan, page 867, in the opinion on page 877 and 378,is this language: “The counsel for plaintiff in error relied upon Palmer v. Anderson, 8 Michigan, 395, and Dawson v. Dunbar & Company, 15th Michigan, 489, to show that where the grantor remains in possession after conveyance, he is to be regarded as holding under his grantee,and not by any other claim.
“Those cases hold that such possession after conveyance is not notice of any other claim as against third persons; *750 but they do not hold that it is incompatible with any other right as against the grantee if any such existed, and is not inconsistent, in fact, with the existence of the grant. ”
Now, these cases,we think, recognize this distinction that I have endeavored to point out. So that leaves the operation of the other general rule, which is not denied, that the possession of lands by a person is constructive notice of whatever right he actually has in the lands; and for the disposition of this case, it is not necessary to decide whether or not this contract should be construed as requiring the railway company to maintain a pass. It is sufficient to show that the contract required the company to make it, in the first instance, and following from that necessarily would be the impropriety and illegality of the act of the company to fill up the pass — the company that was bound by this contract to make it; so that the original railroad company would have had no right whatever to fill up this pass, even if it was not bound actually to maintain it; that is, to keep it in order etc.,and the plaintiff being in possession at this time,at the time of the sale and purchase of this property, we think such rights as he would have in the premises as against the original railroad company, might be maintained notwithstanding the purchase of the property by the present railway company.
This contract, whatever may be its requirements, whatever acts it might require, in the first place, is continuing so far as it was not performed by the making of the deed, as far as the grantor is concerned; and in this connection,attention is called to the case of Reid v. Sycks, 27th Ohio St. 285, the third paragraph of the syllabus being: “The covenants of the vendee contained in such contract of sale, to assume and pay off said mortgage as part payment qí the purchase money, are neither performed, satisfied, surrendered, nor merged by the mere o mveyance to him by the vendor, in the absence of anything in the deed, or the acts of the parties showing that such covenants of the vendee have been in fact performed or satisfied.”
Again, in 45 Ohio State, the case of Brumbaugh v. Chapman, page 368, in the opinion of the court, on page 375, speaking of this matter, this is said: “The case of Reid v. Sycks, 27th Ohio State, 285, cited to us, is quite different from the one presented by the record before us, and is not in conflict with what has just been announced. It was there simply held that the deed did not execute a prior agreement of the vendee to assume and pay an existing lien upon the property, that had been assumed by the vendee as part of the *751 purchase money. As a rule, the deed does not execute any of the stipulations of the vendee as to the consideration to be paid for the property. Its office is to execute the agreement on the part of the vendor, and the learned judge, in delivering the opinion in that case, was careful to observe this distinction,in the use of the language: ‘The obligation to pay the purchase money was not merged by the deed, which was only in performance on the vendor’s part. * * * The covenant to convey is performed by the conveyance; but covenants relating to other things than a mere conveyance, are not thus performed.’ ”
Andrews Bros., for Plaintiff.
Siuayne, Swayne & Hayes, and S. A. Wildman, for Defendant.
Now, in view of the open and notorious character of this possession and all the circumstances attending it, we think it would be grossly inequitable for the railway company to be allowed to fill up this cattle pass, and the finding and decree of the court will be in favor of the plaintiff, and against the defendant.